## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| SURETEC INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | Case No.: 1:18-cv-1247-ACA |
| v. | } } | |
| ETERNITY LLC, et al., | } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

The matter before the court is plaintiff SureTec Insurance Company's (SureTec) Application for Preliminary Injunction. (Doc. 1). The court has carefully considered the application, the supporting brief, and the arguments presented at the November 7, 2018 hearing. For the following reasons, the application for preliminary injunction (doc. 1) is **GRANTED**. The specific terms of the injunctive relief are set forth by separate order.

### I.      Background

The parties to this action are plaintiff SureTec and defendants Eternity LLC ("Eternity"), BMP, Inc. ("BMP"), and Bobby Shane McCarty, an individual. SureTec is a surety company and is in the business of issuing payment and performance bonds

on behalf of contractors like Eternity. (*See* doc. 2 at 2). Eternity is plumbing contractor, and Mr. McCarty is the sole member of Eternity. (Doc. 1 at ¶¶ 2, 7; Doc. 18 at 1). Eternity was awarded a contract to complete certain plumbing work on a construction project at Talladega College. (Doc. 1 at ¶ 7; Doc. 2 at 4; Doc. 18 at 1). The contract required Eternity to guarantee the company's work with a payment and performance bond. (*See* doc. 2 at 2; doc. 18 at 1). SureTec issued the payment and performance bond.

Before SureTec issued the bond, SureTec required Eternity, BMP, and Mr. McCarty execute an Indemnity Agreement in favor of SureTec in the event that Eternity did not perform its obligations on the Talladega College construction project. (Doc. 2 at 2). The agreement intended to protect SureTec against assuming "the sole risk that any failure or default by Eternity might result in loss to it." (Doc. 2 at 2). The agreement was executed, and the defendants became Indemnitors promising to "indemnify and save [SureTec] harmless" in the event of any failure or default by Eternity. (Doc. 2-1 at ¶ 2). Specifically, the Indemnity Agreement provided:

> 2. The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds . . . and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to interpret or enforce . . . any of the obligations under the Bonds or of the Indemnitors under this Agreement. (Doc. 2-1, ¶ 2).

The Agreement goes onto provide:

> 3. Payment of loss or deposit of cash, cash collateral, or other collateral security acceptable to the Company shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment or established any reserve therefor . . . The Indemnitors stipulate and agree that the Company will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Company is entitled to specific performance of the Collateral Requirement. (Doc. 2-1, ¶ 3).

After beginning construction on the Talladega project, Eternity allegedly failed to complete its work under the contract. (*See* Doc. 18 at 1). Eternity was terminated, and the developer of the Talladega College project submitted a claim to SureTec against the bond for payment of costs associated with completion of the contract. (Doc. 2 at 5). Upon receiving the claim, SureTec sent a demand letter to the defendants. (Doc. 2 at 5). The letter informed the Indemnitors of their obligations and demanded collateral in the amount of $135,000.00 as security for SureTec's projected loss under the claim. (Doc. 2 at 5). After investigating the claim, SureTec issued a $105,000.00 payment to the project developer for a full and final settlement of the claim. (Doc. 2 at 5).

It is undisputed that defendants have not deposited any collateral with SureTec. SureTec seeks a preliminary injunction ordering defendants to deposit collateral with SureTec in the amount of $135,000.00.

## II.    Standard of Review

A preliminary injunction "is an extraordinary remedy." *Bloedorn v. Grube,* 631 F.3d 1218, 1229 (11th Cir. 2011). "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Id.* "A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts,* 612 F.3d 1279, 1290 (11th Cir. 2010). To prevail on an application for a preliminary injunction, SureTec must establish: (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [SureTec] outweighs whatever damage the proposed injunction may cause [defendants]; and (4) if issued, the injunction would not be adverse to the public interest." *Bloedorn,* 631 F.3d at 1229.

## III.   Discussion

### *Substantial Likelihood of Success on the Merits*

SureTec seeks specific performance of a collateral security provision contained in the Indemnity Agreement.   Under Texas law, "[s]pecific performance is an equitable remedy that may be awarded upon a showing of breach of contract." *Stafford v. Southern Vanity Magazine, Inc.,* 231 S.W.3d 530, 535 (Tex. App. 2007).[1]

"[T]he party seeking specific performance must also establish that there is no

---

[1] The Indemnity Agreement includes a Texas choice of law provision.  (Doc. 2-1, ¶ 20) ("This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with, the laws of the State of Texas.").

adequate remedy at law to compensate it for its loss." *South Plains Switching, Ltd. v. BNSF Ry. Co.,* 255 S.W.3d 690, 703 (Tex. App. 2008). This means that the plaintiff must establish that it "cannot be fully compensated through the legal remedy of damages or [that] damages may not be accurately ascertained." *General Universal Sys., Inc. v. Lee,* 379 F.3d 131, 153 (5th Cir. 2004); *Stafford,* 231 S.W.3d at 535 ("Specific performance is ... an equitable remedy used as a substitute for monetary damages when such damages would not be adequate.").

Here, the evidence before the court establishes a "high likelihood that specific performance will be the appropriate remedy to enforce the collateral security clause." *Hartford Fire Ins. Co. v. 3i Construction, LLC*, 2017 WL 3209522 (N.D. Tex. May 15, 2017). To begin, "[c]ase law nationwide has recognized the right of a surety to use the equitable remedy of specific enforcement to secure collateralization of its right to indemnification of the principal's debt." *Auto-Owners Ins. Co. v. Randy B. Terry, Inc*., 2013 WL 6583959, at *6 (N.D. Ala. 2013) (citations omitted). And, undisputed evidence establishes that defendants breached their contract with SureTec. It is undisputed that the defendants executed the Indemnity Agreement and are bound by it. In fact, there is no evidence, or argument even, that the Indemnity Agreement is unenforceable. It is also undisputed that a claim has been made against the SureTec bond. (Doc. 1 at ¶ 18 *cf.* doc. 18 at 1). And no one disputes that SureTec made a demand on the defendants for the collateral deposit required under the agreement. (Doc. 1 at ¶ 19; *cf.* docs. 9, 10, 11 at ¶ 19). But to prevail on its claim for specific

performance, SureTec must also demonstrate that there is no adequate remedy at law. For the same reasons that the court finds SureTec has demonstrated an irreparable harm, it also finds SureTec has demonstrated that that there is no adequate remedy at law. Accordingly, there is a substantial likelihood that SureTec will succeed on the merits of its claims.

### Irreparable Harm

To warrant the extraordinary relief it seeks, SureTec must demonstrate irreparable harm in the absence of injunctive relief. SureTec claims it will suffer irreparable harm because, absent an injunction, it will lose the benefit of its bargain under the Indemnity Agreement, namely its rights under the collateral security provision. It also contends that "there are significant questions on whether the Indemnitors are in the process of selling, diverting, or transferring assets and whether the Indemnitors have the financial ability to satisfy their obligations to SureTec." (Doc. 2 at 11). Because the court agrees that SureTec will lose the benefit of its bargain absent an injunction, it does not decide whether SureTec sustained its burden of proving insolvency or diversion of assets.

SureTec, like the surety in *International Fidelity Ins. Co. v. Talbot Construction, Inc.*, is "not simply an unsecured creditor of defendants seeking to freeze defendants' assets before judgment can be obtained. [It] specifically bargained for a collateral security provision pursuant to which defendants contractually agreed to post collateral with the plaintiff in the event plaintiff establishes a reserve against

losses and demands such amount from defendants." 2016 WL 8814367 * 7 (N.D. Ga. April 13, 2016). Therefore, "[d]amages available after trial and judgment, even if including costs and interest, are of little use to [SureTec] when it is responsible for investigation, defending, and paying claims on bonds in the present" and this is true for losses that SureTec has already paid. *Id.* In short, "[a]bsent an injunction, [SureTec] would suffer the harm of having its rights under the Indemnity Agreement effectively nullified. [SureTec] would be unsecured against claims and loss while Defendants would be free to sell, transfer, or conceal their assets to avoid their obligations." *Developers Surety & Indemnity v. Bi-Tech Construction, Inc.,* 964 F. Supp. 2d 1304 (S.D. Fla. 2013). Because SureTec will effectively lose its bargained-for rights under the Indemnity Agreement without an injunction, the court finds it has demonstrated an irreparable injury.

### *Balance of Equities and Public Interest*

Finally, plaintiff must demonstrate that the threatened injury outweighs any harm that will result if the injunction is granted and that the public interest is not harmed by the issuance of the injunction. The court finds that defendants "are not unfairly prejudiced by being held to the agreement to indemnify [SureTec] to which they were signatories." *Hartford*, 2017 WL 3209522, at *4. Put differently, "if Defendants are required to post collateral security here, they are merely being required to perform pursuant to the terms of the otherwise undisputedly clear and valid Indemnity Agreement to which they are a party with [SureTec]." *Travelers*

*Casualty and Surety Company of America v. Padron*, 2017 WL 9360906, at \*12 (W.D. Tex. 2017) (citing *Travelers Cas. and Sur. Co. of Am. v. Indus. Commercial Structures, Inc.*, 2012 WL 4792906, at \*4 (M.D. Fla. Oct. 9, 2012) ("Travelers is only asking the Court to require Defendants to do that which Defendants contractually agreed to do."); *Hanover Ins. Co. v. Holley Constr. Co.*, 2012 WL 398135, at \*6 ("Although Defendants may suffer harm as a result of this injunction, this harm is the result of enforcement of an Indemnity Agreement which Defendants entered; an injunction would only require Defendants to do that which they agreed to do.")). Accordingly, the balance of hardships weighs in SureTec's favor.

Similarly, the "requested injunction comports with the public interest in enforcing contracts and maintaining the solvency of surety companies that support public construction projects." *Developers Surety & Indemnity v. Bi-Tech Construction, Inc.,* 964 F. Supp. 2d 1304 (S.D. Fla. 2013). Indeed, "[e]nforcement of contract terms not oppressive, onerous, or otherwise unconscionable is favored as a matter of public policy." *Talbot*, 2016 WL 8814367, at \*9 (N.D. Ga. 2016) (citations omitted). Accordingly, the court finds that enforcement of a collateral security provision in an indemnity agreement that it indisputably enforceable is not adverse to the public interest.

## IV.    Conclusion

As deduced by a federal district court in Georgia, "[c]ourts appear to permit specific performance of collateral security provisions to protect three interests of the

surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should Indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement." *Talbot*, 2016 WL 8814367, at *7 (N.D. Ga. 2016). This court finds that all three interests are at stake here and, consequently, SureTec's application for preliminary injunction is granted.

**DONE** and **ORDERED** this November 15, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE